IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

WILLIAM A., Sr.,

                    Plaintiff,

           v.                                    Civil Action No.
                                                 6:22-CV-0294 (DEP)


COMMISSIONER OF SOCIAL SECURITY

                    Defendant.

---

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OFFICE OF                       PETER W. ANTONOWICZ, ESQ.
PETER W. ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          CANDACE BROWN CASEY, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

---

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that he was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance benefits

("DIB") for which he has applied.  For the reasons set forth below, I

conclude that the Commissioner's determination did not result from the

application of proper legal principles and is not supported by substantial

evidence.

I.    BACKGROUND

Plaintiff was born in October of 1978, and is currently forty-four years

of age.  He was forty-one years old as of both October 10, 2019, the date

upon which he allegedly became disabled, and December 13, 2019, the

date upon which he filed his application for benefits.  Plaintiff stands five

feet and eleven inches in height, and weighed approximately three-hundred

and fifteen pounds during the relevant time period.  Plaintiff reports that he

lives with his wife and five children in a house in Rome, New York.

In terms of education, plaintiff reports that he graduated from high

school and attended some college, but did not obtain a degree.  He worked

in the past most relevantly as an assistant manager of both a movie theater

and a retail store, a custodial worker at a hospital, a delivery driver, and a

school lunch monitor.

Physically, plaintiff alleges that he suffers from chronic pain in his lower back and right knee in particular, as well as from daily migraines and asthma that impact his ability to engage in activity. He has received treatment for his various physical impairments with Dr. John King and others at Oneida Medical Practice, Dr. Nicholas Qandah at Central New York Brain and Spine Neurosurgery, Dr. Glady Jacob at Rome Neurology, Dr. Mohammed Seedat at Rome Pulmonary and Sleep Medicine, various sources at Delta Medical including nurse practitioner ("NP") Elizabeth Scialdone and NP Magdalena Skowron, Rome Memorial Hospital, Bouton Physical Therapy, and Chestnut Commons Physical Therapy. Plaintiff additionally alleges that he suffers from depression and anxiety, for which he has received some treatment from providers at the Madison County branch of New York State's Office of Mental Health.

Plaintiff alleged at the administrative hearing related to his application for benefits that he suffers from daily migraines that make it difficult to concentrate, and which are triggered by light, noise, or staring at a screen for longer than forty-five to sixty minutes. He often wakes up in the morning with headaches that can last three hours or longer, although forcing himself to vomit can help alleviate them. Plaintiff also reported

suffering from chronic pain in his back, treatment for which has included

injections and a procedure to cauterize the nerves in that area.  This pain

allegedly limits his ability to stand, and he uses a cane to assist with that.

In addition to his back pain, plaintiff reports that issues with his right knee

also impact his abilities to walk and stand.  Plaintiff testified that he can

perform various household chores such as washing dishes but those

activities take longer to accomplish because he needs to take breaks due

to pain, and activities such as mopping and sweeping are very difficult for

him.  Because of his back and knee pain, he also requires help getting into

the shower and putting on socks and pants.

II.     PROCEDURAL HISTORY

    A.     Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security

Act on December 13, 2019.  In support of his application, he claimed to be

disabled due to chronic pain in his lower back and knees, diabetes, chronic

migraines, asthma, depression, learning disabilities, obesity, and allergies.

A hearing was conducted on December 2, 2021, by Administrative

Law Judge ("ALJ") Bruce S. Fein to address plaintiff's application for

benefits.  On December 13, 2021, ALJ Fein issued an unfavorable

decision, finding that plaintiff was not disabled at the relevant times, and

thus ineligible for the benefits sought.  That opinion became a final

determination of the agency on February 25, 2022, when the Social

Security Appeals Council ("Appeals Council") denied plaintiff's request for

review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Fein applied the familiar, five-step sequential test

for determining disability.  At step one, he found that plaintiff has not

engaged in substantial gainful activity since the date of his application.

Proceeding to step two, ALJ Fein found that plaintiff suffers from severe

impairments that impose more than minimal limitations on his ability to

perform basic work functions, including migraines without aura, lumbar

spondylosis with radiculopathy, osteoarthritis of the right knee, adjustment

disorder, and anxiety disorder.  As part of his step two finding, ALJ Fein

also found that plaintiff's alleged asthma, chronic obstructive pulmonary

disease ("COPD"), sleep apnea, type II diabetes, obesity, hyperlipidemia,

and acid reflux do not rise to the level of severe impairments.

At step three, ALJ Fein examined the governing regulations of the

Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of those listed

conditions, specifically considering Listings 1.15, 1.16, 1.18, 11.02, 12.04, and 12.06, as well as analyzing plaintiff's migraine headaches under Social Security Ruling ("SSR") 19-4p.

ALJ Fein next surveyed the available record evidence and concluded that, during the relevant time period, plaintiff retained the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), with the following additional restrictions:

> he can occasionally perform all postural tasks with the exception that he cannot climb ropes, ladders, or scaffolds; should avoid concentrated exposure to unprotected heights, hazardous machinery, noise at the loud or higher level per the DOT/SCO, work outdoors in bright sunshine and work with bright or flickering lights, and pulmonary irritants such as fumes, odors, gases, dust and poorly ventilated areas; it is limited to simple, routine, and repetitive tasks; and is limited to work in a low stress job defined as only occasional decision making, changes in work setting, and judgment required on the job.

ALJ Fein found at step four that, with the above RFC, plaintiff is unable to perform any of his past relevant work.[2]  Proceeding to step five, the ALJ elicited the testimony of a vocational expert ("VE") regarding how plaintiff's limitations would impact his ability to perform other available work

---

[2]     The vocational expert who testified at the hearing stated that a person with plaintiff's RFC could work as a cafeteria attendant and movie theater attendant. Questioning whether plaintiff performed work at those positions at the level of substantial gainful activity, however, the ALJ did not conclude that plaintiff could perform past relevant work, and proceeded to step five of the sequential analysis.

in the national economy and concluded, in light of the VE's testimony, that

plaintiff remains able to perform such work, citing as representative

positions those of mail clerk, office helper, and marker II.  Based upon

these findings, ALJ Fein concluded that plaintiff was not disabled during the

relevant period.

    C.    <u>This Action</u>

    Plaintiff commenced this action on March 28, 2022.[3]  In support of his

challenge to the ALJ's determination, plaintiff argues that the ALJ's

decision is not supported by substantial evidence, most notably because he

believes the ALJ erroneously rejected various opinions suggesting greater

limitations, particularly with regard to the plaintiff's abilities to stand and

walk, and failed to find any of the provided opinions to be more than

partially persuasive.  Dkt. No. 13.  Plaintiff also argues somewhat

separately that the ALJ improperly assessed the evidence in the record

related to plaintiff's migraine headaches and did not fully accommodate for

the full extent of the limitations caused by that impairment as supported by

the evidence.  *Id.*

---

[3]    This action is timely, and the Commissioner does not argue otherwise.  It has
been treated in accordance with the procedures set forth in the Supplemental Social
Security Rules and General Order No. 18.  Under those provisions, the court treats the
action procedurally as if cross-motions for judgment on the pleadings have been filed
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Oral argument was conducted in this matter, by telephone, on August 23, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.

1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

9

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments that significantly restricts his or

her physical or mental ability to perform basic work activities.  *Id.* §§

404.1520(c), 416.920(c).  If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an

impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d),

416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant

is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149

(N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.

1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

 If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

 The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

 C. <u>Analysis</u>

 Plaintiff's first argument is related to the ALJ's assessment of the

various opinion evidence in the record.  Specifically, he asserts that the ALJ erred by not properly weighing much of that opinion evidence, and failed to rely on the opinion of any medical source, given that he did not find any source's opinion to be fully persuasive.  Because I find that the ALJ's assessment of the opinion evidence related particularly to the issue of standing and walking during the workday raises serious questions that preclude meaningful judicial review of the ALJ's findings, remand for further proceedings is warranted.

The administrative record in this case contains numerous opinions related to plaintiff's physical functioning from various different sources, including two state agency nonexamining medical consultants, a consultative examiner, an independent medical examiner related to plaintiff's worker's compensation claim, and multiple treating physicians and nurse practitioners.  Despite this wealth of medical evidence, plaintiff is correct that the ALJ found no opinion to be more than partially persuasive. Although such fact by itself does not necessarily constitute error, as an ALJ need not rely on the totality of one opinion, or indeed any opinion, to the extent the medical evidence otherwise supports his or her findings, the ALJ's explanations for how he evaluated these various opinions do not show to my satisfaction that he properly assessed those opinions in a

manner that is supported by substantial evidence.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (noting that "[w]here, however, the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, . . . a medical source statement or formal medical opinion is not necessarily required") (internal citations and quotation marks omitted); *Marie R. v. Comm'r of Soc. Sec.*, 21-CV-0775, 2022 WL 2180989, at *21 (N.D.N.Y. June 14, 2022) (Hummel, C.J.) (collecting cases that an ALJ need not adhere to the entirety of one medical opinion).  Because I find that the limitations related to standing and walking, and also perhaps sitting, are the most relevant to the discussion of the ALJ's error, my analysis will focus fairly exclusively on those aspects of the various opinions.[4]

The state agency medical consultants assigned to evaluate plaintiff's application for benefits, Dr. J. Koenig and Dr. C. Krist, both opined, among other restrictions, that plaintiff retains the ability stand and/or walk for a total of two hours in an eight-hour workday and sit for six hours in an eight-hour workday.  Administrative Transcript ("AT") at 92, 107.[5]  The ALJ found their

---

[4]    The opinions of Dr. John King, NP Zimmerman, and Dr. Daniel Carr will not be discussed because they do not appear to render any opinion regarding plaintiff's abilities to stand, walk, and sit, specifically.

[5]    The administrative transcript is found at Dkt. No. 10 and will be referred to throughout this decision as "AT__."

opinions to be partially persuasive, but noted specifically that the limitation related to standing or walking is "inconsistent with the claimant's presentation during most examinations and reported activities of daily living."  AT 18.

Consultative examiner Dr. Gilbert Jenouri opined, following an examination of the plaintiff, that plaintiff has moderate to marked restriction in walking and standing long periods, bending, stair climbing, lifting, and carrying, as well as a need to avoid respiratory irritants.  AT 779.  The ALJ found this opinion also to be partially persuasive, rejecting it to the extent it suggested marked restrictions, believing such opinion to be inconsistent with the mild to moderate findings on objective imaging, presentation during most examinations, the course and intensity of plaintiff's treatment, and his varied activities of daily living.  AT 19.

Treating neurosurgeon Dr. Nicholas Qandah opined, in relevant part, that plaintiff can stand or walk only one hour in an eight-hour workday, and can sit only four hours in an eight-hour workday.  AT 1188.  The ALJ found this opinion to be partially persuasive, but specifically rejected the limitations related to standing, walking, and sitting as inconsistent with the medical imaging, physical examination findings, treatment history, reported activities of daily living, and the opinions of the state agency medical

14

consultants.  AT 19-20.

NP Magdalena Skowron issued multiple opinions in August of 2021. In one of those, she opined that plaintiff can stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday.  AT 1434. However, in another form, when asked whether plaintiff is limited in his ability to sit, stand, walk, or lift, NP Skowron wrote that plaintiff is "unable to do so due to pain in low back," as well as limited range of motion.  AT 1441.  Although the ALJ overall found the first opinion to be only partially persuasive, he found the specific limitations for standing, walking and sitting for six hours, along with certain others, to be "generally consistent with the claimant's above discussed medical imaging, presentation during physical examinations, treatment history, and activities of daily living."  AT 20.  As to the second opinion, however, the ALJ found that to be not persuasive, stating that the relevant limitations are inconsistent with the physical examinations, plaintiff's activities of daily living, his own testimony, and the other opinions of record.  AT 20.

In a form dated prior to the alleged onset date, NP Katherine Freeman opined that plaintiff is severely limited in his ability to walk due to an arthritic, neurological, or orthopedic condition.  AT 557.  The ALJ found this opinion to be not persuasive on the basis that it does not quantify to

what extent during an eight-hour workday plaintiff is able to walk, is not supported by any clinical findings, and is inconsistent with clinical findings, plaintiff's treatment history, and his reported activities of daily living.  AT 21.

Lastly, the ALJ found partially persuasive various statements by providers throughout the record that plaintiff could continue to work at "light duty."  AT 19.  The ALJ found that, although the term "light duty" is "somewhat vague," it is "not inconsistent with the other evidence of record including the claimant's MRI and X-ray imaging, physical examinations, response to treatment, and activities of daily living."  AT 19.

As can be seen from the above summary, the only opinion evidence on which the ALJ relied for his finding that the plaintiff could perform the standing and walking requirements of light work included various general comments to the effect that plaintiff can perform "light duty" work, and one of the opinions provided by NP Skowron.  I find that such reliance does not provide the required substantial evidence to support the ALJ's RFC finding on these activities.

Notably, the ALJ has offered no basis for his interpretation of the term "light duty" as being equivalent to "light work" as defined by the Social

Security Administration.[6]  Indeed, the ALJ does not point to anything in the treatment records of the sources who indicated plaintiff remained able to perform "light duty" work to indicate that such level of work involved an ability to stand and walk for six hours in an eight-hour workday specifically. Those notations notably do not contain any such specification, and are all also associated with care for plaintiff's right knee, with no indication that the physicians providing for light duty were accounting for limitations present related to plaintiff's lower back impairment; they also primarily were rendered prior to plaintiff's alleged onset date.  *See* AT 803 (indicating that plaintiff could return to work to light duty, but, if no light duty is available, he is out of work until February 28, 2018), 956 (noting that plaintiff was released to light duty with no lifting over fifteen pounds on October 25, 2018, and was at that time working part-time at light duty), 961 (noting in May 2019 that plaintiff was still working part time at light duty), 1491 (also in May 2019, source recommending that plaintiff continue at light duty with no strenuous activities), 965 (noting in July 2019 that plaintiff has been working part time at light duty but has been unable to return to full duty),

---

[6]     Light work is defined in the regulations as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and which "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

968 (continuing light duty restriction in September 2019), 971 (instructed to continue light duty in November 2019), 975 (noting that by December 2019, plaintiff was no longer working in any capacity).  The ALJ does not explain whether or how he considered the context of these statements, or how such context impacts their persuasiveness related to plaintiff's abilities since the alleged onset date of disability.  He also acknowledges that such term is vague.  "Light duty" might suggest that plaintiff is capable of some type and amount of work, but it says very little about the specifics of the restrictions that plaintiff would require. Those statements therefore cannot constitute substantial evidence to support an ability to perform the demands of light work specifically.  *See Nugent v. Berryhill*, 15-CV-0111, 2017 WL 4053818, at *3 (W.D.N.Y. Sept. 14, 2017) (finding that "there is no basis for concluding that the term 'light duty' as used by plaintiff is the equivalent of light work as defined in the Commissioner's regulations," given that "plaintiff is not an attorney who is versed in the language of the regulations").

As to the opinions of NP Skowron, it is not at all clear to me that the ALJ considered a number of important factors related to those opinions – factors which could potentially have a significant bearing on the level of persuasiveness to afford her opinions.  One that is immediately apparent

upon review of the record is the fact that the portion of the opinion regarding the standing, walking, and sitting limitations which the ALJ purportedly adopted and relied on in formulating the RFC finding are explicitly based on a diagnosis of diabetes; that is the only diagnosis listed on the form, the form itself is indicated to be a medical source statement about diabetes, the questions are framed in terms relevant to diabetes, and NP Skowron's written answers address the symptoms and effects of diabetes specifically. AT 1433-35. Despite the fact that this medical source statement appears to address only the extent to which plaintiff's diabetes might impact his functioning, the ALJ never mentions these limiting notations, and appears to construe this opinion as a statement concerning plaintiff's functioning as a result of *all* of his impairments. Relatedly, in the opinion from NP Skowron that the ALJ found to be not persuasive, she specifically stated that, when considering the low back impairment, plaintiff is unable to sit, stand, walk, or lift. AT 1441. Although the ALJ was certainly not required to find that plaintiff is unable to do anything related to those functions, this highlights how his apparent failure to consider the context of the standing, walking, and sitting limitations that were indicated in NP Skowron's diabetes opinion before relying on it to find that plaintiff can perform light work impacted his analysis in a material way.

Further, the ALJ did not indicate how, or whether, he considered the extent to which the timing of the opinions submitted by NP Skowron impacted his assessment of those.  Notably, the diabetes and migraine opinions she submitted are dated August 17, 2021, whereas the other opinion form that the ALJ found to be not persuasive is dated August 18, 2021, only a day later.  The ALJ did not address or attempt to reconcile this huge inconsistency between the standing, walking, sitting, and lifting abilities opined in the diabetes opinion and the other form despite those being rendered so closely in in time with one another, which, again, appears to relate largely to the fact that he did not acknowledge that the opinion expressing a lesser limitation appears premised solely on the effects of plaintiff's diabetes, whereas the one expressing greater limitations is explicitly based on his back and knee impairments.  The ALJ's failure to address these issues prevents meaningful review of whether he has justified his reliance on that opinion, particularly as the failure to assess the basis for the relevant opinions calls into question whether the ALJ's findings regarding supportability and consistency can be said to be supported by substantial evidence.  This presents a significant impediment to determining whether substantial evidence to support the resulting determination exists particularly in this case, given that NP Skowron's

opinion was the only medical opinion that supported the specific standing and walking limitations ultimately adopted by the ALJ in the RFC finding, in contrast to essentially all of the other medical sources who provided an opinion on those specific functions, all of whom expressed a need for greater restriction.

Moreover, apart from the ALJ's apparent failure to closely assess the details of NP Skowron's opinions, I am not convinced that the ALJ's assessment of the other opinions is supported by substantial evidence. The ALJ notably relied on the same general list of reasons for finding less persuasive all of the other opinions expressing greater limitations in standing and walking, and some as to sitting, including inconsistency with the findings on physical examinations, the results of objective imaging from MRIs and x-rays, plaintiff's reported activities of daily living, and his treatment history and response to treatment. However, none of these reasons, to the extent explained in the ALJ's decision, suffices to support his findings that the relevant limitations expressed therein should be rejected.

The ALJ states that the plaintiff's presentation during physical examinations is inconsistent with greater limitations, seemingly relying on the discussion of treatment earlier in his decision. Relevant to this

21

decision, that discussion included notations that, related to plaintiff's chronic back pain, records showed that he has exhibited an antalgic gait, lower spine tenderness, positive straight leg raise tests, and a body mass index over 40, but that he has not exhibited ongoing acute distress, balancing deficits, or deficits in strength, sensation, standing, sitting, or spine range of motion, and has not demonstrated that a cane is medically necessary.  AT 16.  Regarding his right knee impairment, the ALJ acknowledged that treatment records showed that plaintiff exhibited right knee tenderness, swelling, and reduced range of motion, but that he has not shown ongoing balance deficits.  AT 17.  However, it is not apparent why the cited positive findings would necessarily be inconsistent with greater limitations in walking in particular, given that records throughout the relevant period show abnormal gait and use of a cane; irrespective of whether cane use was or was not medically necessary under the requirements of the regulations, use of a cane can still provide helpful information regarding the extent of a claimant's limitations in abilities to stand or walk.  *See e.g.*, AT 562, 758, 762, 777, 890, 1030, 1122, 1316, 1392, 1561.  Further, the ALJ does not explain why the absence of any consistent observations of deficits in balance, strength, or sensation in particular reasonably mean that plaintiff has little limitation in his ability to

22

walk or stand, despite the many other positive findings related to both the lower back and right knee noted in the ALJ's discussion of the evidence. Simply put, the ALJ has not drawn a sufficient logical bridge between the relevant evidence in the record and his conclusion that, contrary to the opinion of nearly every medical source in the record, including those whose treatment notes contain the observations relied upon by the ALJ, plaintiff can perform the standing and walking demands of light work.  I therefore find that this rationale does not provide substantial evidence support for the ALJ's rejection of such limitations in the various medical opinions, or for his RFC finding.

Next, the ALJ finds that the greater limitations in standing and walking in particular are also inconsistent with, as he expresses most clearly related to Dr. Jenouri's opinion, "the claimant's mildly to moderately abnormal medical imaging."  AT 19.  An ALJ is not permitted to interpret raw medical data into functional terms.  *See Barbara B. v. Comm'r of Soc. Sec.*, 2019 WL 5540874, at *4 (N.D.N.Y. Oct. 28, 2019) (Baxter, M.J.) ("There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded from doing only the latter."); *Hazlewood v.*

*Comm'r of Soc. Sec.*, 12-CV-0789, 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) (Hurd, J.) ("The ALJ is not qualified to assess a plaintiff's RFC on the basis of bare medical findings, and where the medical findings in the record merely diagnose a plaintiff's impairments and do not relate those diagnoses to a specific RFC, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."). That, however, is precisely what the ALJ attempted to do in this case, by concluding, despite the multiple opinions of medical sources to the contrary, that mild or moderate degenerative changes or other findings on imaging of plaintiff's right knee and lumbar spine in particular would equate to only mild or moderate limitations in functioning, such as would be consistent with an ability to perform light work. This is improper, given that it does not appear that any medical source has corroborated that interpretation of the imaging evidence. As such, this reason cannot be considered a valid or sufficient to support the ALJ's assessment of the opinion evidence.

The ALJ also relies consistently on the plaintiff's reported activities of daily living as further evidence that plaintiff is not as limited as many of the physicians opine. However, it is not wholly apparent that the ALJ properly considered the extent of any limitations associated with the activities that

plaintiff reported.  In his decision, the ALJ summarizes parts of plaintiff's

testimony at the administrative hearing, in which he stated that he cannot

stand more than one hour in a workday, sit more than one hour at a time,

or perform postural activities, that his wife helps him with bathing and

dressing tasks that require bending or lifting his legs, and that it takes

longer for him to complete household chores because he requires breaks

due to pain.  AT 15.  Yet, in the remainder of the decision, the ALJ noted

that plaintiff remains able to perform childcare, help his children managing

their schooling during the COVID-19 pandemic, drive, manage money,

read, fish while seated, play video games, attend church, walk places,

perform light housework such as cooking cleaning and laundry, and

grocery shop, as purportedly supporting the ALJ's findings.  AT 16-18.

Despite this list, the ALJ ignores much of the nuance of plaintiff's

reports.  His written function report corroborates his testimony at the

hearing, to the effect that he needs assistance from his wife for showering

and some dressing tasks, and also indicates that he requires help with

putting food in the oven if he is cooking, is limited to doing chores like

cleaning the table and countertop when he is able to stand, and that he has

difficulty standing when he does go to church.  AT 440-42, 444.  Further, to

the extent of his reliance upon the activities recorded by Dr. Jenouri that

plaintiff can cook and clean three times per week, do laundry twice per week, shop three times per week, and perform childcare, the ALJ does not address how or to what extent he factored in plaintiff's limiting testimony that he needs to take breaks while doing such activities because of his pain and such tasks therefore take him longer to complete.  AT 71, 777.  Given the ALJ's seeming failure to consider the full range of the reported activities, I am simply not convinced that those activities as actually documented support his rejection of the greater limitations in many of the opinions provided by the various physicians and other medical sources.

The ALJ lastly cites to plaintiff's treatment history and response to treatment as a reason for finding the relevant portions of the medical opinions to be less persuasive.  However, it is not entirely clear from the ALJ's decision what about the plaintiff's treatment history supports his finding.  The ALJ noted that plaintiff received specialized treatment for his lower back pain, including epidural injections.  AT 16.  What the ALJ failed to mention is that the treatment records indicate that such injections provided very little and only temporary relief.  *See e.g.*, AT 1169, 1228.  He underwent a left L4-L5 medial branch block in mid-2021, which did provide significant pain relief for a week, such that it was noted by his physician in August 2021 that he had failed conservative treatment measures and it was

recommended he undergo a second medial branch block with plans for a

future course of radiofrequency ablation of the nerves.  AT 1236.  Plaintiff

underwent that second medial branch block in early September 2021, and

noted in a subsequent visit that the injection had provided significant pain

relief for two days, but the pain had since returned almost to normal level.

AT 1658.  Without explanation by the ALJ, it is not clear to me why such

treatment history is inconsistent with the standing and walking limitations in

the various medical opinions.

    As to plaintiff's right knee, the ALJ acknowledged that plaintiff

exacerbated the pain in that knee as a result of a work accident in February

2018, underwent an arthroscopic surgery in July 2018, and that, although

he had "no ongoing complications following this surgery," he "has

undergone Hylagan injections and physical therapy for his right knee pain

and has reported some improvement in his symptoms with this treatment."

AT 17.  What the ALJ neglected to mention is that plaintiff's 2018 knee

surgery did not provide significant relief for his knee symptoms.  Rather, the

record shows clearly that, one year after that surgery, plaintiff continued to

experience pain and had been unable to be returned to full-duty work; it

was indicated at that time he would likely require another arthroscopic

surgery.  AT 965.  In August 2020, plaintiff reported that the knee injections

he underwent did not help his pain and that he in fact felt more unstable in his knee.  AT 1539.  He was scheduled to have a second arthroscopy in January 2021 but that procedure had to be delayed because of his diabetes.  AT 1153.  Plaintiff underwent physical therapy throughout the first half of 2021, which did result in significant improvement of his pain.  AT 1203.  A full consideration of the evidence therefore reveals some inconsistency with the ALJ's statements, and calls into question whether the ALJ fully and appropriately considered that evidence.  Moreover, although physical therapy did demonstrably help plaintiff's right knee symptoms, such improvement is not documented until 2021, and does not serve to support the ALJ's findings as to any consideration of the portion of the period at issue that is prior to that time.  Under the circumstances, the ALJ's reliance on plaintiff's treatment for his knee impairment does not, by itself, serve as substantial evidence to justify the persuasiveness findings related to the medical opinions in the record.

The ALJ also justifies finding certain opinions less persuasive based on the fact that they are inconsistent with certain other opinions.  However, while the ALJ is correct that the noted opinions do not contain the same limitations, he seemingly neglects to consider that he also rejected the relevant portions of those opinions he attempts to use as a comparison

point.  This faulty logic adds no support to the ALJ's findings.

Finally, the Commissioner argued that, because the vocational expert providing testimony at the administrative hearing indicating that there would be a significant number of jobs plaintiff could perform if limited to sedentary work with all the same nonexertional limitations as are included in the RFC, any error committed by the ALJ is harmless.  I do not agree.  Although certain of the opinions might be consistent with, or suggestive of, a capacity to perform a range of sedentary work, at least some of the relevant opinions indicate an inability to perform even sedentary work.  Most notable are the opinion of Dr. Qandah and August 18, 2021 form from NP Skowrun.  Although there is no clear evidence to show that the ALJ was required to find plaintiff limited to such a significant extent as opined by these sources, the main errors in this case directly call into question whether the ALJ's rejection of those opinions was supported by substantial evidence.  Because I conclude that it is entirely speculative that the ALJ would have had to find plaintiff limited to sedentary work, as opposed to something even more restrictive if the medical opinions of record were properly evaluated, the errors in this case cannot be considered harmless.

For all of the foregoing reasons, I find that the ALJ's assessment of the medical opinions in the record, and his overall assessment of the RFC,

are not supported by substantial evidence, and therefore will remand the matter for further administrative proceedings.

IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 14) is DENIED, the Commissioner's decision is VACATED, and this matter is remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:   August 31, 2023
         Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge